IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

PET TECHNOLOGIES, INC.,
a Michigan corporation,

Civil Action No. _____

      Plaintiff,

v.

JEMA MEDIA, LLC
an Arizona Limited Liability Company,
SERO MEDIA, LLC,
an Arizona Limited Liability Company,
MICHAEL AINSA, individually, and
JEFFREY W. LONG, individually,

**JURY DEMAND**

      Defendants.

_____

## VERIFIED COMPLAINT

Plaintiffs Pet Technologies, Inc. ("Plaintiff") files this complaint for against Defendants Jema Media, LLC; Sero Media, LLC; Michael Ainsa; and Jeffrey W. Long (collectively "Defendants") and in support thereof allege as follows:

### I: THE PARTIES

1.    Plaintiff Pet Technologies, Inc., d/b/a inMotion Group ("inMotion"), is a Michigan corporation with a principal place of business at 18068 Humber Bridge Drive, Macomb, Michigan 48042.

2.      On information and belief, Defendant Jema Media, LLC ("Jema") is an Arizona Limited Liability Company, with a principal place of business in Scottsdale, Arizona.

3.      On information and belief, Defendant Sero Media, LLC ("Sero") is an Arizona Limited Liability Company, with a principal place of business in Scottsdale, Arizona.

4.      On information and belief, Defendant Michael Ainsa ("Ainsa") is a citizen of the state of Arizona and is an agent of co-Defendants Jema and Sero.

5.      On information and belief, Defendant Jeffrey W. Long ("Long") is a citizen of the state of Arizona and is CEO of Jema and is an agent of co-Defendant Sero.

## II: JURISDICTION AND VENUE

6.      This is an action, in part, for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*.

7.      That on or about July 10, 2012, inMotion and Jema, with Long as Jema's signatory, did enter into a non-exclusive license related to certain copyrighted material ("Non-Exclusive License") within this Judicial District and that inMotion did grant the Non-Exclusive License in exchange for consideration from Jema in the amount of $115,000, and that this action is based, in part, upon the

Non-Exclusive License (a copy of the Non-Exclusive License is attached as Exhibit A).

8.      That Ainsa on or about January 9, 2012, did agree to the terms of a non-disclosure agreement (the "NDA") with inMotion to receive certain confidential information related to the Non-Exclusive License, and that Ainsa did receive confidential information from inMotion while in this judicial district, and that, upon information and belief, did wrongfully disclose and improperly use this information to the detriment of inMotion (a copy of the NDA is attached as Exhibit B).

9.      That upon information and belief, Long, individually, and Sero did wrongfully receive and use information related to the Non-Exclusive License, to the detriment of inMotion in the amount of, at least, $115,000.

10.      That diversity of citizenship also exists between inMotion and each of the Defendants.

11.      Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1332, and 1338.

12.      Based upon the above, venue in this district is proper under 28 U.S.C. § 1391(b) and (c).

### III: COPYRIGHT IN SUIT

13.    inMotion is and, at all times relevant to the matters alleged in this complaint, was engaged in the business of creating, producing, maintaining, and licensing computer code for its computer and internet-related software in connection with its businesses.

14.    That on February 21, 2014, inMotion did apply for a copyright registration as to portions of its computer code, and that this application has a Service Request No. of 1-1234417047 (the Copyright Application), and that, upon information and belief, a registration for this copyrighted material is forthcoming (a copy of the Copyright Application is attached as Exhibit C).

### IV: BACKGROUND

15.    inMotion was founded in 1999 and is involved in developing, maintaining, and licensing its business-related software for a scalable advertisement management platform called the "inClick Ad Server" (the "inClick platform")

16.    inMotion has distributed the inClick platform through various non-exclusive licenses with businesses wanting to use the inClick platform, including the Non-Exclusive License with Jema.

17.    That the computer code developed for the inClick platform includes certain "call back" features, wherein the inClick platform gathers information

4

accessible to inMotion regarding the use of the inClick platform by licensed and potentially unlicensed users.

18.    That inMotion, in addition to providing non-exclusive licenses for the right to use the inClick platform, also provides periodic updates to companies that have entered into a non-exclusive license, and that these updates are provided in exchange for fees paid to inMotion.

## COUNT I: BREACH OF NON-EXCLUSIVE LICENSE (JEMA)

19.    inMotion realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein

20.    That on or about July 10, 2012, inMotion and Jema entered into the Non-Exclusive License.

21.    That under the terms of Section 3.2 of the Non-Exclusive License, Jema did receive certain updates for which it has not paid the agreed fee.

22.    That Jema has received other good and valuable services related to the Non-Exclusive Agreement for which it has not paid the agreed consideration. *See* Unpaid Invoices attached as Exhibit D.

23.    That under the Non-Exclusive License, Jema agreed "to not sublicense or redistribute [the inClick platform] Software . . . ." *See* Exhibit A, Non-Exclusive License, at Section 5.

5

24.    That upon information and belief, on or about June 17, 2012, Jema did sublicense or redistribute inClick to Long, individually for use on the website, seroads.com in violation of the Non-Exclusive License.

25.    That Sero Media, LLC was created on or about August 15, 2012, for purposes of operating the seroads.com website, and that on or about August 15, 2012, Jema did sublicense or redistribute the inClick platform to Sero for use on the website seroads.com in violation of the Non-Exclusive License.

26.    That as a result of Jema's breach of the Non-Exclusive License, inMotion has suffered damages in the form of lost licensing revenues that should have been received from Long and Sero in the amount of at least $230,000, as well as lost revenues resulting from Jema's continued failure to pay the outstanding invoices.

## COUNT II: COPYRIGHT INFRINGEMENT
### (SERO AND LONG)

27.    inMotion realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein

28.    The code of inMotion's inClick platform constitutes a literary work protected under the copyright laws, 17 U.S.C. § 102(a) (1).

29.    The portions of inMotion's inClick platform constitute pictorial or graphic work protected under the copyright laws, 17 U.S.C. §§ 102(a) (5).

6

30.     By their actions alleged above, on information and belief, Defendants Sero and Long have infringed and will continue to infringe inMotion's copyright in and relating to its copyrighted material by using, modifying, and placing into the market infringing products which are direct copies of inMotion's copyrighted code and design.

31.     inMotion is entitled to an injunction restraining Defendants Sero and Long (and Sero's agents, officers, employees, successors, and assigns) and all persons acting in concert with them, from engaging in any further such acts in violation of the copyright laws.

32.     inMotion is further entitled to recover from Defendants Sero and Long damages, including attorney fees, it has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of Defendants' acts of infringement alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by inMotion.

## COUNT III: BREACH OF NON-DISCLOSURE AGREEMENT (AINSA)

33.     inMotion realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

34.     That Ainsa entered into the NDA on or about January 9, 2012, for purposes of discussing a potential working relationship in furtherance of the Non-Exclusive License.

7

35.    That as a result of the NDA, inMotion entrusted to Ainsa certain sensitive and confidential information including access to inMotion's software vault.

36.    That Ainsa unilaterally terminated the talks while still being bound by the terms of the NDA.

37.    That while still bound by the terms of the NDA, Ainsa did take inMotion's confidential information and subsequently and wrongfully disclose and utilize the confidential information entrusted to him for the benefit of assisting Jema in breaching the Non-Exclusive License and also of assisting Long and Sero in infringing inMotion's copyrights in the code and designs of the inClick platform.

38.    That Ainsa's use of inMotion's confidential information was an unwarranted disclosure of inMotion's confidential information to the detriment of inMotion.

39.    inMotion is entitled to recover damages sustained as a result of the breach of the NDA. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by inMotion.

## COUNT IV: VIOLATION OF
## MICHIGAN UNIFORM TRADE SECRETS ACT
## (AINSA, LONG, JEMA, AND SERO)

40.    inMotion realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

8

41.    That inMotion had in place certain security measures intended to prevent disclosure of the trade secrets, including placing the code for the inClick platform within a software vault.

42.    That Ainsa and Long represented to inMotion that Ainsa's participation in rolling out the inClick product according to the Non-Exclusive License was desired.

43.    inMotion, based upon the representations of Ainsa and Long, agreed to use Ainsa as an independent contractor subject to the conditions of the NDA.

44.    That inMotion did begin the process of training Ainsa as an independent contractor by assisting Ainsa in preparing various tax documents and also having Ainsa sign the NDA. Ainsa was also introduced to access codes and protocols for inMotion's software vault and provided access to the contents thereof, and that the access codes and protocols, as well as the contents of inMotion's software vault, constituted, and still constitutes, trade secrets of inMotion.

45.    That Ainsa, after acquiring inMotion's trade secrets but before completing his training, did leave inMotion to work directly with Long and Jema.

46.    That as a result of Ainsa's improper acquisition and unauthorized use of inMotion's trade secrets, Ainsa assisted Long and Jema in transferring the inClick platform to the seroads.com website operated by Long, and ultimately operated by Sero.

47. That Ainsa's wrongful and unauthorized use of inMotion's trade secrets was to the detriment of inMotion and for the direct benefit of Ainsa, Long, Jema, and Sero.

48. inMotion is entitled to recover damages sustained as a result of the Michigan Uniform Trade Secrets Act. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by inMotion.

## COUNT V: COMMON LAW UNFAIR COMPETITION
## (AINSA, LONG, JEMA, AND SERO)

49. inMotion realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

50. Jema has willfully committed unfair competition and has willfully disseminated the intellectual property of inMotion, in the form of the code for the inClick platform and other property, to third parties unlicensed to use such property, without inMotion's authorization, thereby causing harm to inMotion through the loss of revenue and diminution in value of inMotion's intellectual property, and other harm, as a result of Jema's unauthorized dissemination of inMotion's property.

51. Ainsa has willfully committed unfair competition and has, without authorization, taken and used the intellectual property and trade secrets of inMotion for the benefit of third parties that are unauthorized and unlicensed to use the inClick platform, thereby causing harm to inMotion through the diminution in

10

value of inMotion's intellectual property and trade secrets, and other harm, as a result of Ainsa's unauthorized use of inMotion's intellectual property and trade secrets.

52.     Long and Sero have willfully committed unfair competition and have willfully used the intellectual property and trade secrets of inMotion, in the form of the code for the inClick platform and other property and trade secrets, without inMotion's authorization, thereby causing harm to inMotion through the loss of revenue and diminution in value of inMotion's intellectual property and trade secrets, and other harm, as a result of Long and Sero's unauthorized use of inMotion's property.

53.     The Defendants knew or should have known that the dissemination and/or use of inMotion's intellectual property and trade secrets was not authorized and that such dissemination and/or use was detrimental to inMotion.

54.     The Defendants' actions violate the common law of Michigan.

55.     inMotion has been and continues to be damaged by the Defendants' continued unauthorized use of inMotion's intellectual property and trade secrets.

56.     inMotion has suffered and will continue to suffer irreparable harm unless the Defendants are restrained from such conduct.

57.     inMotion has no adequate remedy at law.

58.    Because of the Defendants' acts, inMotion has suffered damages and Defendants Jema, Ainsa, Long, and Sero, have been unjustly enriched.

## COUNT VI: UNJUST ENRICHMENT
## (AINSA, LONG, JEMA, AND SERO)

59.    inMotion realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60.    Upon information and belief, as a result of the Defendants' actions, as set forth above, Defendants Jema, Ainsa, Long, and Sero, have, individually and/or collectively, unlawfully received financial and other benefits at inMotion's expense.

61.    Jema, Ainsa, Long, and Sero have been unjustly enriched through their unauthorized and unlawful acquisition, use, and dissemination of inMotion's intellectual property and trade secrets, and inMotion has suffered and will continue to suffer damages, both financially and to its business relationships with its customers.

62.    It is unjust to allow Jema, Ainsa, Long, and/or Sero to retain the benefit of their unlawful actions without compensating inMotion.

WHEREFORE, Plaintiff prays:

A.    for injunctive relief to stop any and all actions by the Defendants to further infringe upon the Plaintiff's copyrights and to prevent the Defendants from further use and disclosure of Plaintiff's trade secrets;

12

B.   that Plaintiff be awarded any and all profits and damages resulting from Defendants' wrongful acts, together with costs and attorney fees; and

C.   that Plaintiff be awarded such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRAL

Plaintiff respectfully demands a trial by jury on each and every issue, question, and/or Count so triable.

## VERIFICATION

I, Irvine G. Pascual, do swear that I have read the Complaint filed in this matter and believe the facts as recited herein to be true to the best of my information and belief.

_____
Irvine G. Pascual
Vice President
Pet Technologies, Inc.


Respectfully submitted,


Dated: February 27, 2014          s/Thomas A. Hallin
                                  _____
                                  Thomas A. Hallin (P29740)
                                  thallin@priceheneveld.com
                                  Matthew J. Stark (P69382)
                                  mstark@priceheneveld.com
                                  PRICE HENEVELD LLP
                                  695 Kenmoor, S.E. | P.O. Box 2567
                                  Grand Rapids, MI 49501 | 616.949.9610
                                  *Attorneys for Plaintiff*

13